DARRYL J. HOROWITT #100898
dhorowitt@ch-law.com
LAURENCE Y. WONG #106495
lwong@ch-law.com
COLEMAN & HOROWITT, LLP
Attorneys at Law
18800 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (310) 286-0233
Facsimile: (310) 203-3870

Attorneys for Plaintiff,
9600 SW 64 LLC, a Delaware
Limited Liability Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 9600 SW 64 LLC, a Delaware Limited Liability Company,<br><br>Plaintiff(s),<br><br>v.<br><br>JH PORTFOLIO DEBT EQUITIES LLC, PORTHOS PORTFOLIO TRADING, RTB CAPITAL, LLC and JH CAPITAL V.I., INC., a Virgin Islands Corporation,<br><br>Defendant(s). | NO.  2:16-cv-5748<br><br>**COMPLAINT FOR DAMAGES FOR FRAUD, NEGLIGENT MISREPRESENTATION AND BREACH OF CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, 9600 SW 64 LLC ("Plaintiff"), alleges as follows:

**JURISDICTION AND VENUE**

1.  Jurisdiction of this court is founded upon 28 U.S.C. § 1332 (a)(1), as this action is brought by Plaintiff, a resident of the State of Delaware, against defendants who are citizens of a different state, namely California as to JH PORTFOLIO DEBT EQUITIES LLC ("JH Portfolio") and PORTHOS PORTFOLIO TRADING ("Porthos), Connecticut as to RTB CAPITAL, LLC ("RTB") and the Virgin Islands as to JH CAPITAL V.I., INC. ("JH Capital"), and the amount in controversy exceeds $75,000.00.

2.  Venue of this court is proper pursuant to 28 U.S.C. § 1391 (a)(1) in

1

that the events which give rise to Plaintiff's claim arose in the Central District of California.

## PARTIES

3. Plaintiff is, and at all times relevant hereto was, a Delaware limited liability company, with its principal place of business in Greenwich, Connecticut. Plaintiff is in the business of purchasing debt, including distressed loans secured by real property, that it services.

4. Defendant, JH Portfolio, is, and at all times relevant to was, a California limited liability company with its principal place of business in Calabassas, California. Plaintiff is informed and believes that at all times relevant hereto, JH Portfolio engaged in the business of selling and servicing debt, including distressed loans secured by real property through mortgages.

5. Defendant, JH Capital, is, and at all times relevant to was, a corporation organized under the laws of the Virgin Islands. Plaintiff is informed and believes that at all times relevant hereto, JH Capital engaged in the business of selling and servicing debt, including distressed loans secured by real property through mortgages.

6. Plaintiff is informed and believes and thereon alleges that all times relevant hereto, defendants JH Portfolio and JH Capital were agents of each other and were acting at all times in such a capacity.

7. Plaintiff is informed and believes and thereon alleges that defendant, RTB, is, and at all times relevant hereto was, a limited liability company with its principal place of business in New Canan, Connecticut.

8. Plaintiff is informed and believes that defendant, Porthos, is, and at all times relevant hereto as, a limited liability company with its principal place of business in Irvine, California.

9. Plaintiff is informed and believes and thereon alleges that at all times relevant hereto, RTB and Porthos were agents of JH Portfolio and JH Capital and

were acting at all times in such a capacity.

**FACTS**

**A.     The Agreement to Purchase Debt.**

10.    In June 2015, Plaintiff was interested in purchasing distressed residential real estate loans secured by first mortgages.

11.    In early June 2015 (the exact date Plaintiff does not recall but should be in the possession of defendants, and each of them), Plaintiff was contacted by Joel Markowitz, of Porthos, a broker of distressed debt.  Plaintiff is informed and believes and thereon alleges was, at all times affiliated with JH Portfolio and JH Capital (by either common ownership, common officers and directors, or both), who advised Plaintiff that it was able to offer for sale certain distressed residential real estate loans secured by first mortgages.

12.    Plaintiff was provided with basic information regarding the loans that were offered for purchase including a tape that included information regarding the original amount of the loan, the remaining balance, and the city where the property was located that secured the loan.

13.    Based on the information provided, Plaintiff advised the broker that it was interested in purchasing five of the offered loans and, to that end, submitted a written "Letter of Intent" ("LOI").

14.    In response to the LOI, defendants, and each of them, provided a written agreement to facility the purchase of the loans entitled "Mortgage Loan Sale Agreement" ("the Agreement").   By providing Plaintiff with the Agreement, defendants, and each of them, confirmed to Plaintiff that they had merchantable title to each of the loans that were to be sold pursuant to the Agreement.

15.    Pursuant to the LOI, Plaintiff was to be given an opportunity to review any of the loans purchased pursuant to the Agreement and reject any loans that were not acceptable to Plaintiff after Plaintiff completed its review and due diligence.

16. Because Joel Markowitz advised Plaintiff that defendants, and each of them, had marketable title to each of the loans that Plaintiff was interested in purchasing, and because defendants, and each of them, led Plaintiff to believe that they had title to each of the loans offered for sale in the Agreement, on or about June 30, 2015, Plaintiff entered into the Agreement, subject to the condition in the LOI that it would have the opportunity to review any of the loans purchased pursuant to the Agreement and reject any loans that were not acceptable to Plaintiff after Plaintiff completed its review and due diligence.

**B.   Defendants' Fraud.**

17. On or about August 15, 2015, defendants, and each of them, delivered to Plaintiff documents relating to each loan including what purported to be the promissory note, deed of trust securing the amounts due on each promissory note, and a statement of account including the payments made and credited to each of the purchased notes.

18. Upon receipt of the documents from defendants, Plaintiff began to conduct its due diligence regarding the loans purchased from defendants, and each of them, per the terms of the LOI and the Agreement. In doing so, Plaintiff learned that none of the loans purchased was what defendants, by and through their agent and as identified in the Agreement, stated they be and learned instead that none of the loans were loans secured by a first deed of trust. To the contrary, the loans were either junior loans or there was no evidence that there was any loan secured by a deed of trust on the property at all. Plaintiff thus received nothing of value from defendants, and each of them, pursuant to the Agreement.

**C.   Plaintiff's Rescission.**

19. On or about December 1, 2015, Plaintiff gave written notice to defendants, and each of them, of defendants failure to the loans identified in the LOI and the Agreement, secured by enforceable first deeds of trust and demanded that defendants, and each of them, repurchase the loans.

20. Defendants, and each of them, thereafter agreed to repurchase each of the loans and Plaintiff has agreed to return to defendants everything they received from defendants following execution of the Agreement, but defendants, and each of them, have failed to do so and continue to fail to do so.

21. At the time defendants, and each of them, made the representations regarding the loans (i.e., that the loans were secured by enforceable first deeds of trust on each property identified in the LOI and Agreement), defendants, knew that such representations were false and they could not deliver the loans they represented would be transferred to Plaintiff pursuant to the LOI and the Agreement and did not do so.

22. At the time defendants, and each of them, made the representations regarding the loans (i.e., that the loans were secured by enforceable first deeds of trust on each property identified in the LOI and Agreement), defendants, and each of them, did so with the intent to induce Plaintiff to enter into the Agreement.

**D.     The Settlement Agreements**

23. On or about May 26, 2016, Plaintiff and defendants, JH Portfolio and JH Capital entered into a "Rescission and General Settlement and Release Agreement", a true and correct copy of which is attached hereto as Exhibit "A" and made a part hereof.

24. On or about May 31, 2016, Plaintiff and defendants, RTB and Porthos entered into a General Settlement and Release Agreement, a true and correct copy of which is attached hereto as Exhibit "B" and made a part hereof.

25. Plaintiff has performed all obligations required on its part under both agreements referenced in paragraphs 19 and 20, above.

**E.     JH Portfolio and JH Capital's Breach of the Settlement Agreement.**

26. On or about June 1, 2016, defendants JH Portfolio and JH Capital breached the "Rescission and General Settlement and Release Agreement", by failing to pay to Plaintiff the sum of $196,000.00.

27. Pursuant to paragraph 3 of the "Rescission and General Settlement and Release Agreement", defendants JH Portfolio and JH Capital were required to "cure all aspects of the collateral for the Lake Worth Loan in a form and substance that allows title to be transferred to" Plaintiff within thirty (30) days of the date the "Rescission and General Settlement and Release Agreement" was signed.

28. Defendants, JH Portfolio and JH Capital, failed to cure the default on the Lake Worth Loan. As such, on July 16, 2016, Plaintiff gave notice of rescission of the Lake Worth Loan.

29. Defendants, JH Portfolio and JH Capital have further breached the "Rescission and General Settlement and Release Agreement" because, despite demand for rescission and the passage of five (5) business days from the date of demand, defendants JH Portfolio and JH Capital have failed to pay to Plaintiff the sum of $65,000.00 due under the agreement.

**F.     RTB and Porthos' Breach of the Settlement Agreement.**

30. Plaintiff has performed all obligations required on its part under the "General Settlement and Release Agreement.

31. Pursuant to paragraph 2 of the "General Settlement and Release Agreement, the parties agreed that if JH Portfolio and JH Capital could not cure the Lake Worth Loan, Plaintiff could rescind the Loan Sale Agreement and, on demand defendants RTB and Porthos were required to pay to Plaintiff the sum of $2,121.26, within five (5) business days of the date of notice of rescission of the Lake Worth Loan to JH Portfolio and JH Capital.

32. In addition to notice of rescission of the Lake Worth Loan to JH Portfolio and JH Capital, on or about July 17, 2016, Plaintiff gave notice to RTB and Porthos of the rescission and demand for payment of the amounts due under the Agreement.

33. Defendants RTB and Porthos have breached the "General Settlement and Release Agreement" by failing to pay to Plaintiff the sum of $2,121.26.

### FIRST CLAIM FOR RELIEF

### (Against Defendants JH Portfolio and JH Capital

### for Breach of Contract - Settlement Agreement)

34. Plaintiff incorporates by reference paragraphs 1-29 of the Complaint as though fully set forth herein.

35. As a result of defendants, and each of their, failure to pay the amounts due under the "Rescission and General Settlement and Release Agreement", despite demand, Plaintiff has been damaged in the sum of $261,000.00, together with interest at the rate of ten percent per annum from June 1, 2016.

### SECOND CLAIM OF RELIEF

### (Against Defendants JH Portfolio and JH Capital for Fraud)

36. Plaintiff incorporates by reference paragraph 1-29 and 35 of the Complaint as though fully set forth herein.

37. At the time defendants JH Portfolio and JH Capital entered into the "Rescission and General Settlement and Release Agreement" dated May 26, 2016, defendants, JH Portfolio and JH Capital had no intent to perform any of the terms of the agreement and entered into the agreement merely to avoid Plaintiff filing a complaint against defendants for fraud.

38. In reliance of the false promise of defendants JH Portfolio and JH Capital that they would perform the terms of the "Rescission and General Settlement and Release Agreement" dated May 26, 2016, Plaintiff entered into the agreement. At the time the agreement was signed, Plaintiff had no reason to believe that defendants, and each of their, promises were false.

39. As a result of defendants, and each of their, fraud, Plaintiff has been damaged in the sum of $261,000.00, together with interest at the rate of 10% per annum from December 15, 2015 (the date the monies were originally due to be returned after Plaintiff gave notice of rescission under the Agreement).

40. Plaintiff is informed and believes and thereon alleges that defendants,

and each of them, have a pattern and practice of selling distressed debt knowing that the debt being sold is not consistent with the representations defendants, and each of them, have made regarding the debt and, as that the debt being sold in fact has little or no value.  Plaintiff is further informed and believes and thereon alleges that at the time defendants, and each of them entered into the Agreement, they knew that the debt being sold had little or no value and was not consistent with the representations they had made regarding the quality and enforceability of the debt instruments.  Further, the actions of defendants, and each of them, in entering into the "Rescission and General Settlement and Release Agreement" dated May 26, 2016, without any intention to perform under the agreement were all part of defendants, and each of their scheme to defraud Plaintiff and was despicable and with  malice and fraud, in conscious disregard of the rights to Plaintiff, justifying an award of exemplary and punitive damages in the sum of $1,000,000.00.

## THIRD CLAIM FOR RELIEF

**(Against all Defendants RTB and Porthos for Breach of Agreement)**

41.     Plaintiff incorporates paragraphs 1-32 of the Complaint as though fully set forth herein.

42.     By virtue of defendants, and each of their, breach of the "General Settlement and Release Agreement", Plaintiff has been damaged in the sum of $2,121.26, together with interest at the rate of ten percent (10%) per annum from July 25, 2016.

WHEREFORE, Plaintiff prays for damages against defendants, and each of them, as follows:

## On the First Claim for Relief

1.     For damages in the sum of $261,000.00; and,

2.     For interest on the above sum at the rate of ten percent (10%) per annum from June 1, 2016.

8

### On the Second Claim for Relief

1. For damages in the sum of $261,000.00;

2. For interest on the above sum at the rate of ten percent (10%) per annum from December 15, 2015; and,

3. For exemplary and punitive damages in the sum of $1,000,000.00.

### On the Third Claim for Relief

1. For damages in the sum of $2,121.26;

2. For interest on the above sum at the rate of ten percent (10%) per annum from July 25, 2015.

### On all Causes of Action

1. For costs of suit incurred herein, including reasonable attorney fees; and,

2. For such other and further relief as the court may deem just and proper.

Dated: August 2, 2016                    COLEMAN & HOROWITT, LLP


By:  /s/ Darryl J. Horowitt
    DARRYL J. HOROWITT
    Attorneys for Plaintiff,
    9600 SW 64 LLC

///
///
///
///
///
///

## **DEMAND FOR JURY TRIAL**

Plaintiff, 9600 SW 64 LLC, a Delaware limited liability company, hereby demands trial by jury in the above-captioned matter.

Dated: August 2, 2016                                COLEMAN & HOROWITT, LLP

                                                     By: /s/ Darryl J. Horowitt
                                                     DARRYL J. HOROWITT
                                                     Attorneys for Plaintiff,
                                                     9600 SW 64 LLC